**Frank GROVE, et al., Appellants,**

v.

**Lee F. SUTLIFFE, et al., Defendants.**

**Price Waterhouse & Co., et al., Respondents,**

**Clifton Gunderson & Co., et al., Respondents,**

**Touche, Ross & Co., et al., Respondents.**

No. WD 50722.

Missouri Court of Appeals, Western District.

Dec. 26, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1996.

Application to Transfer Denied March 26, 1996.

John W. McClelland, Kansas City, for appellants.

Harvey L. Kaplan, Kansas City, for Price Waterhouse & Co., et al.

John M. Edgar, Kansas City, for Clifton Gunderson & Co., et al.

Thomas E. Deacy, Jr., Kansas City, for Touche, Ross & Co., et al.

Before SMART, P.J., and LOWENSTEIN and BERREY, JJ.

SMART, Judge.

This case involves a suit brought by trustees of a liquidating trust of a defunct corporation against accounting firms formerly performing services for the corporation, which was being operated for the purpose of defrauding investors. The key issue of the case is whether the trustees have standing to maintain claims against the defendant accounting firms. We affirm the decision of the trial court granting a judgment on the pleadings for defendants.

Frank Grove, Jay Vonachen, Michael Riley, Ronald Weiss, and Thomas Dremel, in their capacity as trustees of the First Humanics Corporation Liquidating Trust, appeal from an order of the circuit court sustaining respondents' motions for judgments on the pleadings. Appellants filed a petition against respondents Price Waterhouse and all individual partners, with Trent B. Chambers and John Jordan named as class repre-

sentatives, alleging counts of negligence, breach of contract, fraud, conspiracy, and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"). Deloitte & Touche and all individual partners, with Thomas Hogan named as class representative, were also named as defendants in the petition. Allegations against Deloitte & Touche set out in the petition were negligence, fraud, breach of contract, conspiracy and violations of the RICO Act. Clifton, Gunderson & Co. was named as a defendant in four counts, breach of contract, negligence, fraud and conspiracy.

Appellants originally filed this action on September 12, 1991. They were allowed to amend their petition but it was eventually dismissed without prejudice on December 18, 1992. The petition was refiled on January 7, 1994 adding fraud and RICO claims and attempting to bring claims not only on behalf of First Humanics Corporation (FHC) but as class representative of FHC's creditors. Respondents filed motions for judgment on the pleadings. On November 22, 1994, the trial court granted these motions. On February 7, 1995, the trial court certified the order sustaining the motions as a final appealable judgment pursuant to Rule 74.01(b).

FHC is a Delaware not-for-profit organization with its primary executive offices in Kansas City, Missouri. It was engaged in the ownership and operation of nursing homes, primarily in the state of Illinois. On September 13, 1989, FHC filed a petition for relief under Chapter 11 of the Bankruptcy Code. Appellants allege that the bankruptcy of FHC was primarily caused by the actions of Lee Sutliffe, an individual who gained control of Faith Evangelistic Mission Corporation in 1984. Sutliffe changed the name of Faith Evangelistic Corporation to First Humanics Corporation and used the corporation to operate nursing homes. The petition alleges that Sutliffe controlled FHC through individuals selected by him as directors.

The petition alleges that Sutliffe took control of FHC to use it as a vehicle for issuing industrial revenue bonds. Beginning in 1984, FHC acquired twenty-one nursing homes. The issuance and sale of bonds totalled more than eighty million dollars. At the time of confirmation of FHC's bankruptcy plan its facilities were valued at thirty million dollars and it had in excess of six million dollars in unsecured claims (sought as damages in the petition). The petition alleges that Sutliffe was running a classic Ponzi scheme. FHC "was ever falling behind on its debt service and other obligations, was ever short of adequate cash flow and working capital, and was having to make up such shortfalls by borrowing revenues from other projects and by closing more and later bond-financed deals...."

Thomas Hogan is the class representative named in the petition for a class consisting of all partners of the public accounting firm of Deloitte & Touche. Deloitte & Touche established an accountant/client relationship with FHC in 1984 which lasted until 1986. Deloitte & Touche were employed by FHC to provide financial forecasts and feasibility studies in connection with twelve of the twenty-one bond issues. Price Waterhouse and all individual partners, with Trent B. Chambers and John Jordan named as class representatives, were first employed in 1986 to serve as experts and advisors in relation to nine of the twenty-one bond issues.

Appellants' petition alleges that both Deloitte & Touche and Price Waterhouse failed to perform their services "with the requisite degree of diligence, skill and care, and performed their services in a reckless, negligent, and/or wilful manner." The negligence of both firms is described in the petition as encompassing:

(a) significant reliance upon the facts and figures provided by Lee Sutliffe, when Touch & PW knew, or should have known, that they could not reasonably rely on such facts and figures in performing their feasibility analyses and forecasts due to Sutliffe's lack of competence and integrity and track record at prior performance; (b) they failed to consider that almost all of the previous acquisitions and bond issues had fallen far short of the forecasted performance; and (c) knowing that there was commingling of the funds between each of the acquisitions and bond issues, they nevertheless conducted their feasibility analyses and issued their forecasts based upon

individual acquisitions and bond issues and not as commingled.

The petition claims that as a direct and proximate result of the specified negligence FHC and the class members were damaged. In addition to negligence the petition advanced claims of breach of contract, fraud, conspiracy, and civil RICO against both Deloitte & Touche and Price Waterhouse.

Clifton, Gunderson & Co. conducted an audit of FHC for the fiscal year ending in November, 1986. They issued a clean unqualified audit opinion. The petition alleges that a "going concern" qualification was needed and that the financial position of FHC was not fairly or adequately reported. Appellants contend that the clean opinion made possible the issuance of revenue bonds for the purchase of an additional nursing home resulting in a loss of "approximately $6.5 million." Clifton, Gunderson & Co. was named as a defendant in four counts, breach of contract, negligence, conspiracy and fraud.

Appellants contend that the trial court erred in sustaining respondents' motion for judgment on the pleadings because: (1) they are not barred under Missouri law from recovery; (2) they have standing to assert the claims because they were assigned all claims of FHC and are bringing the action on behalf of all of FHC's trade creditors; (3) they adequately pleaded the required elements for negligence, breach of contract, conspiracy and fraud; and (4) the statute of limitations does not bar the action as appellants' injuries were not capable of ascertainment until the filing of the bankruptcy petition on September 13, 1989. The order of the trial court, sustaining the motions of respondents for judgment on the pleadings, is affirmed.

### Standard of Review

Rule 55.27(b) allows for a judgment on the pleadings. "The party moving for judgment on the pleadings admits, for purposes of the motion, the truth of all well pleaded facts in the opposing party's pleadings." *Madison Block Pharmacy, Inc. v. U.S. Fidelity and Guaranty Co.*, 620 S.W.2d 343, 345 (Mo. banc 1981). The court in *Madison* noted the similarity of the position of a party moving for a judgment on the plead-

ings to that of a movant on a motion to dismiss in that even if the facts pleaded are assumed to be true, it is argued that as a matter of law they are insufficient. *Id.* Although a motion for judgment on the pleadings admits the truth of well pleaded facts, it does not admit the truth of conclusions of law and matters that are not well pleaded. *Holt v. Story*, 642 S.W.2d 394, 395–96 (Mo.App. 1982). A motion for judgment on the pleadings should not be granted if the pleadings present a material issue of fact. *Main v. Skaggs Community Hosp.*, 812 S.W.2d 185, 186 (Mo.App.1991). In *Brown v. Scheible*, 814 S.W.2d 5, 7 (Mo.App.1991), the court stated:

The trial court should properly dismiss a petition on the pleadings alone when "from the face they present no material issue of fact and the moving party is entitled to judgment as a matter of law." *Schwartz v. Lawson*, 797 S.W.2d 828, 833 (Mo.App. 1990). "Where the running of the statute of limitations depends upon when the plaintiff discovered or by reasonable diligence could have discovered the fraud, a question of fact is presented." *Schwartz*, 797 S.W.2d at 836. Thus, plaintiff's petition should have been dismissed only if, as a matter of law, it could be determined from the pleadings that the fraud was capable of ascertainment more than five years prior to the filing of the petition.

### Standing

Appellants contend that the trial court erred in granting respondents' motion for judgment on the pleadings because FHC was not barred from recovering damages even though the insiders and directors of FHC participated in the fraudulent scheme. FHC would have us apply an "adverse interest exception" because the insiders and directors were not acting in FHC's best interests. Appellants' petition does not allege facts, however, that would allow application of the exception. In fact, the pleadings support the position of respondents that FHC is barred from pursuing this action because "a participant in a fraud cannot also be a victim entitled to recover damages, for he cannot have relied on the truth of the fraudulent

representations, and such reliance is an essential element in a case of fraud." *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449, 454 (7th Cir.1982) *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982). Respondents point out that the appellants, standing in the shoes of FHC, are attempting to sue respondents for FHC's own fraud.

Both appellants and respondents discuss *Cenco* in their briefs. In *Cenco,* most of the members of management (but not all) were engaged in a fraudulent scheme involving the inflating of inventories above their actual value thus increasing the apparent worth of the company and the market price of its stock. *Id.* at 451. The inflated stock was used to buy other companies cheaply. *Id.* Eventually, the company's independent auditors became suspicious but concealed these suspicions and continued to give the company a clean bill of health in audit reports. *Id.* at 452. The company, its managers and the independent auditors were sued by investors in the company after the wrongdoing was discovered and the price of the company's stock dropped. The company cross-claimed against the auditors claiming breach of contract and negligence in that they did not discover and/or reveal the fraud. *Id.*

The *Cenco* court held that a corporation should not be allowed to shift the entire responsibility for fraud to the company's auditors. *Id.* at 456. The court recognized that there are two basic divisions of corporate fraud. It stated:

> Fraud on behalf of a corporation is not the same thing as fraud against it. Fraud against the corporation usually hurts just the corporation; the stockholders are the principal if not only victims; their equities vis-a-vis a careless or reckless auditor are therefore strong. But the stockholders of a corporation whose officers commit fraud for the benefit of the corporation are beneficiaries of the fraud. Maybe not net beneficiaries, after the fraud is unmasked and the corporation is sued—that is a question of damages, and is not before us. But the primary costs of a fraud on the corporation's behalf are borne not by the stockholders but by outsiders to the corporation, and the stockholders should not be allowed to escape all responsibility for such a fraud, as they are trying to do in this case.

*Id.*

Appellants attempt to distance themselves from the actions of the FHC insiders and board, claiming that an "adverse interest exception" applies so as to grant appellants standing in this case. The allegations contained in appellants' petition directly refute such a claim. The petition states, in pertinent part:

> 41. In or about 1984, Lee Sutliffe, an individual from Kansas City, Missouri, gained control of Faith Evangelistic Mission Corporation, a religious corporation which had been granted exemption under Section 501(c)(3) of the Internal Revenue Code. Its name was subsequently changed to First Humanics Corporation. As of July 30, 1984, and from that time forward until the bankruptcy ensued, Sutliffe controlled FHC through individuals selected by him to serve as directors, to wit, the defendant Directors.

> 42. Sutliffe gained control of FHC so he could use it as a vehicle for issuing industrial revenue bonds with respect to which he and those with whom he associated could earn fees or otherwise profit. Specifically, FHC was used as the entity to own nursing homes which could be acquired with excessive financing through the issuance of so called Section 103 bond issues, so named for Section 103 of the Internal Revenue Code which permitted interest on qualify [sic] bonds to be exempt from federal income taxation.

> 43. Section 103 bonds were used to obtain financing for acquisition costs, renovations and refurbishing and issuance costs and fees and other expenses. Such financing was available if the debt service coverage could be shown through a feasibility study of the project. With the FHC, the revenue bonds were used in this manner to obtain excessive financing.

> 44. Starting in 1984 and continuing for the next three years, Sutliffe used FHC to promote the acquisition of 21 nursing homes and the issuance and sale of separate bond issues totalling more than $80 million. At the time of confirmation of

FHC's plan, its facilities had a value of $30 million or less and FHC had in excess of $6 million in unsecured claims....

The "adverse interest exception" applies where an agent is acting adversely to his principal's interest. *In re Investors Funding Corp. of New York Securities Litigation,* 523 F.Supp. 533, 541 (S.D.N.Y.1980). A distinction is made between a case of management stealing or looting from the company and a case where management is stealing from outsiders. *Cenco,* 686 F.2d at 456. Appellants' petition alleges actions typical of the latter instance. Sutliffe and his handpicked company insiders did not loot FHC, but used FHC for the purpose of committing a fraud against outsiders, in this case the municipal bond purchasers. There is nothing in the petition to support appellants' contention that Sutliffe looted FHC. There is nothing to show that FHC had anything to loot. The petition states that "First Humanics had no working capital of its own and was forced to borrow funds to meet its obligations...." It appears from the petition that FHC benefitted from Sutliffe's activities. It prolonged its life as a corporation through the machinations of Sutliffe and had some thirty million dollars in assets at the time of confirmation of its bankruptcy plan.

Appellants claim that the facts in the petition are almost indistinguishable from those asserted in *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.1983), presumably because the company in *Schacht* also went insolvent. Review of *Schacht,* however, shows that appellants' reliance upon it is misplaced. The facts in *Schacht* allege misconduct whereby the parent corporation continued an insurance company in business past the point of insolvency and looted the insurer, "draining it of its least risky and most profitable business." *Id.* at 1345. The *Schacht* court distinguished *Cenco,* noting that in *Cenco,* the fraud was perpetrated against outsiders. *Id.* at 1347. The *Schacht* court did not hold that the adverse interest exception applies in every case where a company goes insolvent, but rather that suit against corporate insiders who loot their own companies is not barred by *Cenco. Id.* at 1348–49.

Driving a corporation into bankruptcy is not to be equated with looting that corporation. The argument made by appellants,

that FHC was not benefitted because it was bankrupt, was considered and soundly reject in *Seidman & Seidman v. Gee,* 625 So.2d 1 (Fla.App.1992). In *Gee,* the company's liquidator argued that the actions of its manager were adverse to the corporation's interest because the company ended up being liquidated. *Id.* at 3. The court distinguished between short term and long term benefit, holding that the company did benefit by the fraud because it was integral to its marketing program and it allowed it to continue in business. *Id.* The court held: "Where it is shown, without dispute, that a corporate officer's fraud intended to and did benefit the corporation, to the detriment of outsiders, the fraud is imputed to the corporation and is an absolute defense to the corporation's action against its accounting firm for negligent failure to discover the fraud." We find this line of reasoning to be persuasive and hold that FHC's action is barred. As FHC has no action against the respondents, neither do appellants as FHC's trustees. *See Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2nd Cir.1991)(a trustee may only assert those claims held by the debtor).

Appellants also argue that they have standing to pursue this matter as representatives of FHC's trade creditors, pursuant to Rule 52.08(a) and 52.08(b)(3), but cite no authority for this proposition. A class representative must be a member of the class it purports to represent. *See Harris v. Union Elec. Co.,* 766 S.W.2d 80, 90 n. 10 (Mo. banc 1989), *cert. denied,* 492 U.S. 919, 109 S.Ct. 3245, 106 L.Ed.2d 592 (1989). Appellants are not trade creditors. They are trustees for FHC. They do not plead any facts which would give them standing to bring an action in behalf of trade creditors.

### Conclusion

For the foregoing reasons, we affirm the order of the trial court granting defendants'-respondents' motion for judgment on the pleadings.

All concur.