Richard MILLER, et al., Appellants,

v.

ERNST & YOUNG, et al., Respondents.

No. 70262.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 4, 1997.

Martin M. Green, Joe D. Jacobson, Green, Schaaf & Margo, P.C., Clayton, for appellants.

William J. Travis, Greensfelder, Hemker & Gale, P.C., St. Louis, Albert Zuard Renkey, Ernst & Young, LLP, Washington, D.C., for respondent.

GERALD M. SMITH, Judge.

Plaintiffs, as the representatives of the bankruptcy estate of Bank Building and Equipment Corporation (BBC), appeal from the grant of summary judgment against them and in favor of Ernst & Young in their suit for negligence. Suit was brought against Ernst & Young and three former employees of BBC. The trial court certified the summary judgment final for purposes of appeal. We affirm.

The facts necessary to decide this appeal are essentially uncontested and are contained in the allegations of plaintiffs' petition. The three former employees sued were Carl Weis, former chief executive officer of BBC, Myron Carpenter, former chief financial officer of BBC and Doug Clements, former president and general manager of BBC's Loughman division. Weis and Carpenter were Clements' superiors.

Plaintiffs alleged that during 1988 and 1989, Clements committed fraud by manipulating the Loughman division's "percent complete" accounting system to portray Loughman as a growing and profitable business. BBC's core business was the construction of bank buildings. By 1988 it had lost 60% of that core business. Loughman division manufactured woodwork and millwork. BBC management focused on Loughman as a source for BBC's growth and began borrowing money to finance that growth. The basic objectives of the fraud committed by Clements were to make jobs appear to be more profitable than they actually were, to make jobs appear to be profitable when in fact they were not, and to accelerate the rate at which revenues were recorded. This made BBC a better candidate for lines of credit or other borrowing. Clements, and employees acting at his direction, accelerated percent complete calculations so that reported percent complete calculations were ahead of actual progress on the jobs. Loughman thereby recognized on its books revenue and profit on jobs before it performed the work. Existing jobs were made to appear to be substantially farther along than they really were, in some cases reaching 100% completion long before they reached completion in reality.

As jobs were reported to have reached 100% completion, it became necessary to shift costs from one job to another. Clements instructed Loughman employees which jobs should not have further cost allocated to them and which jobs should have costs allocated to them. Acceleration of the percent complete calculations to show increased revenue and profit forced Loughman to increase the volume of its new business so the percent complete acceleration could be rolled forward. This resulted in obtaining unprofitable job contracts.

Plaintiffs alleged that both Weis and Carpenter were negligent in failing to act on repeated warnings that Clements was manipulating the Loughman accounting system.

Ernst & Young is a partnership engaged in certified public accounting and was the regular independent auditor of BBC. In September 1989, just 48 hours prior to the closing of a very large loan from Landmark Bank to BBC, Ernst & Young advised Carpenter of substantial problems with the Loughman accounts. This information was communicated to Landmark which withdrew its loan commitment. BBC eventually entered bankruptcy. The premise of liability against Ernst & Young is that it was negligent in not discovering the fraud at Loughman earlier, which plaintiffs allege, would have allowed BBC to survive.

Summary judgment was granted at an earlier time in this case in favor of Ernst & Young. We reversed that judgment because the motion for summary judgment and supporting documentation did not meet the requirements of Rule 74.04. *Miller v. Ernst & Young,* 892 S.W.2d 387 (Mo.App.1995). We do not find a similar deficiency in the record now before us.

The parties have addressed a number of issues which we do not find it necessary to decide. Most notably (1) the question of whether the record mandates a finding as a matter of law that Ernst & Young was not negligent, or (2) that after a reasonable peri-

od for discovery plaintiffs have been unable to produce evidence of such negligence, and (3) that the record establishes as a matter of law that Weis and/or Carpenter were negligent.

Issue (3) arises because Ernst & Young contends that the contributory negligence of BBC, arising from negligent mismanagement by Weis and Carpenter, is an absolute defense in a case where only economic damages are involved. *Chicago Title Insurance Company v. Mertens,* 878 S.W.2d 899 (Mo.App. 1994)[4]; *Miller v. Ernst & Young, supra,* ftn. 1. The parties have briefed extensively the applicability of the contributory negligence defense as it applies to accountants and whether Missouri should or should not adopt the position arising from the holding in *National Surety Corporation v. Lybrand,* 256 App.Div. 226, 9 N.Y.S.2d 554 (1939). In that case the court in a 3 to 2 decision held that accountants are commonly employed for the very purpose of detecting employee defalcations which the employer's negligence has made possible. The court found no reason, therefore, to hold that the accountant was not liable to his employer in cases where the employer was also guilty of negligence. The court held the negligence of the employer is a defense only when it has contributed to the accountant's failure to perform his contract and to report the truth. *National Surety* involved loss to the employer from longtime embezzlement by an employee.

Other jurisdictions have followed the *National Surety* case. *Fullmer v. Wohlfeiler & Beck,* 905 F.2d 1394 (10th Cir.1990); *Lincoln Grain, Inc. v. Coopers and Lybrand,* 216 Neb. 433, 345 N.W.2d 300 (1984); *Jewelcor Jewelers & Distributors, Inc. v. Corr,* 373 Pa.Super. 536, 542 A.2d 72 (1988); *Greenstein, Logan & Co. v. Burgess Marketing, Inc.,* 744 S.W.2d 170 (Tex.App.1987). *National Surety* has not, however, been universally followed. *Federal Deposit Insurance Corporation v. Deloitte & Touche,* 834 F.Supp. 1129 (E.D.Ark.1992); *Halla Nursery, Inc. v. Baumann–Furrie & Co.,* 454 N.W.2d 905 (Minn.1990); *Garnac Grain Co. v. Judd,* No. 84–0708–CV–W–3–1

(U.S.D.C.W.D.Mo.1992)(applying Missouri law). We do not find it necessary to determine whether *National Surety* is the proper rule to apply in this state where the facts are comparable to that case. Here they are not.

The plaintiffs here stand in the shoes of BBC and are subject to the same defenses that would be available to the defendant if BBC had brought the action.[1] In *Grove v. Sutliffe,* 916 S.W.2d 825 (Mo.App.1995) the Western District of this court dealt with a similar issue to that before us. Relying upon *Cenco, Inc. v. Seidman & Seidman,* 686 F.2d 449 (7th Cir.1982) cert. den. 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982), the court noted the difference between fraud to which the corporation is the victim and fraud to which the corporation is the beneficiary. The court quoted from *Cenco, supra,* the following:

> Fraud on behalf of a corporation is not the same thing as fraud against it. Fraud against the corporation usually hurts just the corporation; the stockholders are the principal if not only victims; their equities vis-a-vis a careless or reckless auditor are therefore strong. But the stockholders of a corporation whose officers commit fraud for the benefit of the corporation are beneficiaries of the fraud. Maybe not net beneficiaries, after the fraud is unmasked and the corporation is sued—that is a question of damages, and is not before us. But the primary costs of a fraud on the corporation's behalf are borne not by the stockholders but by outsiders to the corporation, and the stockholders should not be allowed to escape all responsibility for such a fraud, as they are trying to do in this case.

Corporations can act only through their agents. Generally the actions of the agent bind the principal. There is an exception to that rule where the agent is acting adversely to his principal's interest. *Grove, supra* at [5]. The *Grove* court rejected the application of the "adverse interest exception" in those cases where the action of the agent, although fraudulent, was for the benefit of the company. It distinguished *Schacht*

1. Other entities which may have suffered damages from any negligence of Ernst & Young, such as creditors, may not be subject to the same defenses.

*v. Brown,* 711 F.2d 1343 (7th Cir.1983) cert. den. 464 U.S. 1002, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983) which involved a suit where corporate insiders looted their own company, in which case the adverse interest exception did apply. The *Grove* court specifically held that driving a corporation into bankruptcy is not to be equated with looting the corporation. *Id.*

■ The undisputed facts in this case mark it as of the same nature as *Grove* and *Cenco.* The fraud practiced here was to make the corporation appear to be more profitable and viable than it in fact was. This would enable the corporation to obtain lines of credit to continue its business. The corporation was, at least until discovery of the fraud, the beneficiary of the fraud and outsiders were the victims. This is not the situation found in *National Surety, supra,* where the corporation was the victim of the embezzlement of the employee. *Lincoln Grain, supra,* did utilize *National Surety* in a case where the corporation was the beneficiary of the fraud and not a victim, but did not address that distinction.

Where the fraud is to victimize the corporation, *National Surety* does not permit the corporation's negligence to preclude recovery against the auditors unless that negligence prevented the auditors from doing their job. However, where the fraud is to benefit the corporation the issue addressed in *Cenco* and *Grove* is not contributory negligence but attribution of the employee's fraud to the corporation. Because the adverse interest exception does not apply in those cases the corporation is attempting to recover from the auditors for its own fraud. This it cannot do. The rules of principal and agent, and the nature of corporate organization and activity make the distinction drawn in *Cenco* of paramount importance in assessing the liability auditors will bear to the corporation for negligence in failing to detect defalcations or fraud by a corporate employee. We do not find cases which fail to recognize the distinction set forth in *Cenco* and *Grove* to be persuasive.

*Cenco* discusses at some length, and finds it unnecessary to determine, the level of employee whose fraudulent conduct on behalf of the corporation is to be attributed to the corporation in an action by the corporation against its auditors. *Cenco, supra* at 456. We similarly find it unnecessary to determine such level. Clements was the manager of BBC's most financially important division. He was responsible for supervision of the division and the day to day operations of that division. He was not an overly zealous low level employee, but part of the management of BBC. His fraudulent conduct is attributable to BBC and precludes plaintiffs, who stand in the shoes of BBC, from recovering from Ernst & Young for the alleged negligence of Ernst & Young. The trial court correctly granted the motion for summary judgment.

Judgment affirmed.

CRANE, P.J., and PUDLOWSKI, J., concur.