

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| JEMERIO HARRIS and JACQUELINE ARMSTRONG, | ) ) ) | No. ED110325 |
| Plaintiffs/Appellants, | ) ) ) | Appeal from the Circuit Court of the City of St. Louis |
| vs. | ) ) | Case No: 2022-CC10410 |
| | ) ) | |
| CITY OF ST. LOUIS, MISSOURI, JAMES ZWILLING, MICHAEL SCEGO, and TIMOTHY BOYCE, | ) ) ) ) | Honorable Christopher E. McGraugh |
| Defendants/Respondents. | ) | FILED: October 11, 2022 |

## Introduction

Jemerio Harris (Harris) and Jacqueline Armstrong (Armstrong) (collectively Appellants) appeal from the Amended Order and Judgment (Judgment) granting the motion for judgment on the pleadings filed by the City of St. Louis (the City), James Zwilling (Officer Zwilling), Michael Scego (Sergeant Scego), and Timothy Boyce (Officer Boyce) (collectively Respondents) and entering judgment in favor of Respondents on Appellants' petition for wrongful death, negligence, and negligence *per se*.

## Factual and Procedural Background

On July 24, 2019, Officer Zwilling with the City of St. Louis Metropolitan Police Department (SLMPD) was patrolling the College Hill neighborhood of north St. Louis. Around

4:00 p.m. that afternoon, Officer Zwilling observed third party Danny Harris (Suspect) and another individual conduct what Officer Zwilling believed to be a hand-to-hand drug deal.

After Suspect spotted the police vehicle, he attempted to elude Officer Zwilling but Officer Zwilling pursued Suspect. Suspect fled east on De Soto Ave. for .25 miles, ignored a stop sign, and turned north onto Blair Ave. Thereafter, Officer Zwilling activated his emergency lights and sirens in an attempt to conduct a traffic stop.

Officer Zwilling then observed Suspect travel .17 miles on Blair Ave., turn west onto College Ave., and accelerate at a high rate of speed. Officer Zwilling continued the pursuit of Suspect and during his pursuit, Officer Zwilling broadcast the location and description of Suspect's vehicle to other officers.

Officer Zwilling observed Suspect cross the intersection of College Ave. and West Florissant Ave., ignoring yet another stop sign, and nearly colliding with a bystander's vehicle, who swerved to avoid a high-speed collision with Suspect.

Shortly thereafter, Sergeant Scego observed Suspect turn east on Carter Ave. at a high rate of speed. Suspect lost control of his vehicle and slid onto the curb at the southeast corner of the intersection. Sergeant Scego positioned his vehicle behind Suspect, who again fled at a high rate of speed. Sergeant Scego pursued Suspect south on Linton Ave., which is a one-way northbound street, in order to attempt an arrest.

Suspect then turned east on Penrose St., which is a one-way westbound street. Sergeant Scego observed Suspect traveling south on E. Prairie Ave. at a high rate of speed through Fairground Park, a 131-acre city park with pedestrian traffic. Sergeant Scego continued to pursue Suspect and advised other officers of Suspect's path of travel.

Around the same time, Officer Boyce was conducting a traffic stop just south of Fairground Park, in Suspect's path of travel described by Sergeant Scego moments earlier. Officer Boyce let the stopped vehicle go, made a U-turn, and drove northbound through Fairground Park. Officer Boyce was then driving directly at Suspect, who was driving in the opposite direction.

Officer Boyce observed Suspect traveling southbound at an extremely high rate of speed. In order to avoid a high-speed, head-on collision, Officer Boyce swerved off the road into Fairground Park on the east side of the street. Suspect continued southbound and Officer Boyce and Sergeant Scego continued to pursue him.

At the intersection of Vandeventer Ave. and Palm Street, Officer Boyce observed Suspect come to an abrupt stop facing the wrong way on Palm Street, which is a one-way eastbound street. At this time, Suspect's license plate number was broadcast to other officers, and as Suspect fled west on Palm Street at a high rate of speed, Officer Boyce continued the pursuit.

During the pursuit, Suspect drove past his residence at 3949 Palm Street. Suspect stated in his post-arrest interrogation that he was attempting to evade police in an attempt to go back to his home. Suspect then turned north on Warne Ave., then turned east on Natural Bridge Blvd. On Natural Bridge Blvd., Sergeant Scego unsuccessfully attempted to deploy a tire deflation device to stop Suspect's vehicle. Both Officer Boyce and Sergeant Scego continued to pursue Suspect east on Natural Bridge Blvd.

Officer Boyce then observed Suspect turn south on E. Prairie Ave., accelerate at a high rate of speed, and ignore all traffic signals. Officer Boyce stated that he deactivated his vehicle's emergency lights and siren at the intersection of E. Prairie Ave. and Dodier Street due to the "substantial risk of serious physical injury to motorists and pedestrians," thereby disengaging

3

from his attempt to stop Suspect. Officer Boyce then disseminated to other officers in the area that he was disengaging his pursuit of Suspect.

Meanwhile, Suspect continued to drive at a high rate of speed in an attempt to flee from police. Suspect "turned to assess where the police vehicles were located" and as he turned forward, Suspect realized he was about to crash into a vehicle occupied by Armstrong and Reniece Randle (Randle), Harris's mother. After failing to stop, Suspect impacted the right side of the vehicle at the intersection of Page Ave. and E. Prairie Ave.

At the intersection of Dr. Martin Luther King Dr. and Prairie Ave., where Officer Boyce was then located and approximately 900 feet from Suspect's location at the time of the collision, Officer Boyce "saw a plume of smoke that he suspected to be a vehicle crash caused by the Suspect." The collision occurred both out of sight of the closest police officer and after the police had ceased their attempts to stop Suspect.

Officer Boyce arrived at the scene 15-20 seconds after the crash and immediately observed that Suspect's vehicle and Armstrong's vehicle were involved in a collision. Randle was a passenger in the front right seat of the bystander vehicle. She was pronounced dead at 4:40 p.m. by the responding paramedics. Armstrong sustained serious injuries.

Thereafter, on December 1, 2020, Appellants filed their petition alleging claims of wrongful death and negligence against Respondents as a result of the motor vehicle collision that occurred on July 24, 2019. On December 31, 2020, Respondents filed their motion for judgment on the pleadings arguing, *inter alia*, that Respondents' conduct was not the proximate cause of Appellants' injuries as a matter of law. On July 12, 2021, the trial court entered its Order and

4

Judgment granting the City's motion for judgment on the pleadings, and on December 30, 2021, the trial court entered its Judgment in favor of all Respondents.[1]  This appeal follows.

## Standard of Review

This Court reviews a judgment on the pleadings to determine "whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." Emerson Electric Co. v. Marsh & McLennan Cos., 362 S.W.3d 7, 12 (Mo. banc 2012) (quotation omitted); see also Rule 55.27(b).  For purposes of the motion, we treat as true the well-pleaded facts of the petition, and we accord the non-moving party all reasonable inferences drawn therefrom.  Id.  "Although a motion for judgment on the pleadings admits the truth of well pleaded facts, it does not admit the truth of conclusions of law and matters that are not well pleaded." Grove v. Sutliffe, 916 S.W.2d 825, 828 (Mo. App. W.D. 1995).  We will affirm a judgment on the pleadings "where under the conceded facts, a judgment different from that pronounced could not be rendered notwithstanding any evidence which might be produced." Armstrong v. Cape Girardeau Physician Assocs., 49 S.W.3d 821, 824 (Mo. App. E.D. 2001).  "Because a judgment on the pleadings addresses an issue of law, our review is de novo and without deference to the circuit court's ruling." State ex rel. Kansas City Symphony v. State, 311 S.W.3d 272, 274 (Mo. App. W.D. 2010).

---

[1] The trial court's July 12, 2021, Order and Judgment stated, "By Order dated February 10, 2021, Plaintiffs Jemerio Harris and Jacqueline Armstrong's ("Plaintiffs") claims against Defendants James Zwilling, Michael Scego, and Timothy Boyce were dismissed, so the only remaining defendant is the City of St. Louis."  The court proceeded to grant only the City's motion for judgment on the pleadings.  While the February 10, 2021, Order dismissed Appellants' claims against the officers in their official capacities, that Order did not dismiss or dispose of Appellants' claims against the officers in their individual capacities.  Therefore, Appellants' claims against the officers in their individual capacities remained pending in this case. Thereafter, following Respondents' motion to amend judgment, the trial court issued its Judgment pursuant to Rule 74.06, in favor of the City and the officers, on all of Appellants' claims against Respondents. Thus, the Judgment disposed of all remaining claims against all remaining defendants in this case.

In a negligence case, the plaintiff must allege facts sufficient to establish a duty, a breach of that duty, and that the breach was the proximate cause of the plaintiff's injuries. Dibrill v. Normandy Associates, Inc., 383 S.W.3d 77, 85 (Mo. App. E.D. 2012). The general test for proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence. Id.

## Proximate Cause

In their sole point on appeal, Appellants argue that the trial court erred in granting Respondents' motion for judgment on the pleadings because Appellants alleged sufficient facts to establish that Respondents were the proximate cause of Appellants' injuries. Specifically, Appellants contend that had Respondents terminated the pursuit in accordance with SLMPD policies, Suspect would have returned to his home and the collision would never have occurred. Appellants insist that because Respondents chose to continue the pursuit in a reckless and negligent manner, disregarding the danger to innocent bystanders, they caused the collision. We disagree.

"To sue for negligence, a plaintiff must prove: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the defendant's breach was a proximate cause of the plaintiff's injury." Stanley v. City of Independence, 995 S.W.2d 485, 487 (Mo. banc. 1999). The third element is raised by Appellants. "The general test for proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence." Id. at 488. "Each case is decided on its own facts, . . . [and p]roximate cause cannot be based on pure speculation and conjecture." Id.

Here, in its Judgment granting Respondents' motion for judgment on the pleadings, the trial court relied on the Missouri Supreme Court's decision in Stanley and held that "[a]ssuming

6

all facts plead by the Plaintiffs are true, those facts do not establish any factual basis to support a finding of proximate cause of the collision between the suspect and Plaintiffs." The trial court found that the facts of this case were so similar to those in <u>Stanley</u> that <u>Stanley</u> was controlling.

Both <u>Stanley</u> and the instant case involve plaintiffs who were injured as a result of motorists fleeing from police officers. In <u>Stanley</u>, a City of Independence police officer was driving his marked patrol car when he saw the fleeing suspect driving a van that matched the description of a vehicle involved in a robbery thirty minutes earlier. <u>Stanley</u>, 995 S.W.2d at 486. When the police officer spotted the van, he attempted to initiate a traffic stop by turning on his emergency lights and giving a "quick yelp" of the siren. <u>Id</u>. The van then fled and the officer followed in close pursuit with lights and siren activated. <u>Id</u>.

During the pursuit, the van continued through a residential neighborhood and on various streets at speeds of approximately 55 miles per hour, eventually dangerously running a red light. <u>Id</u>. At this point, the officer backed off slightly and proceeded through the red light and through the intersection just two car lengths behind the fleeing van. <u>Id</u>. As the fleeing van approached another intersection, the traffic in its lane was stopped at a stoplight. <u>Id</u>. The van veered into the oncoming lane of traffic at nearly 70 miles an hour. <u>Id</u>. The victims, who were traveling in their vehicle, approached the intersection from the opposite direction. <u>Id</u>. As they attempted to get out of the way of the fleeing van, their vehicle was struck by the van, and both victims were killed. <u>Id</u>. At the moment of impact, the officer was 191 feet behind the van and the entire pursuit lasted 45 seconds. <u>Id</u>.

Thereafter, plaintiffs sued the City of Independence and the police officer for wrongful death. <u>Stanley</u>, 995 S.W.2d at 486. As here, plaintiffs alleged the defendant officer acted negligently by pursuing the suspect in violation of a police department special order and further

7

alleged the officer's negligent pursuit was the proximate cause of the ensuing collision and of the plaintiffs' injuries. Id. at 487. In rejecting plaintiffs' arguments, the Missouri Supreme Court in Stanley explained why the officer's 45-second pursuit at speeds reaching 70 miles per hour was not the proximate cause of the suspect's collision with another car:

> Here, [O]fficer Hill's conduct was not the proximate cause of the collision. The suspects in the van made the initial decision to flee, sped through red lights and in the wrong lane of traffic, and collided with the decedents. Any negligence by [O]fficer Hill is connected to the plaintiffs' injury solely through the conduct of the fleeing van. Thus, the only conceivable causal link between the officer's alleged negligence and the collision is the conjectural effect of his pursuit on the pursued vehicle. Shortly after initiating the pursuit, the officer observed, "this guy is going nuts on us." *There is nothing other than speculation to reach a conclusion that the officer's conduct was a cause of the collision. Put another way, there is no way to tell whether the collision would have been avoided if the officer had abandoned the pursuit after initiating it. Thus, there is no factual basis to support a finding of proximate cause.*

Id. at 488 (emphasis added).

Here, as in Stanley, Suspect made the decision to flee from police, then sped through red lights and disregarded all traffic signals while unlawfully refusing to pull over in response to the officer's use of lights and sirens. Id. As in Stanley, during the pursuit of Suspect, the collision at issue occurred just after Suspect's vehicle unlawfully entered an intersection at a high rate of speed. Id. Thus, as in Stanley, Respondents' alleged negligence "is connected to the plaintiffs' injury solely through the conduct of the fleeing [vehicle]" such that "the only conceivable causal link between the officer's alleged negligence and the collision is the conjectural effect of his pursuit on the pursued vehicle." Id. Finally, as in Stanley, "[t]here is nothing other than speculation to reach a conclusion that the officer's conduct was a cause of the collision." Id.

Indeed, Respondents' alleged conduct in this case is even further removed from any causal link to the collision at issue than that in Stanley. In Stanley, the defendant officer pursued the suspect, at times just one car length behind, and remained in close pursuit with lights and

8

sirens activated up until the collision. In fact, the defendant officer followed the fleeing suspect into a lane reserved for oncoming traffic just prior to the collision in that case. Stanley, 995 S.W.2d at 486. Even under these facts and with such close proximity between the defendant officer and the suspect immediately preceding the collision, the Missouri Supreme Court still found "there [was] no factual basis to support a finding of proximate cause" as a matter of law. Id. at 488.

In contrast, here the nearest officer at the time of the collision, Officer Boyce, was so far from the collision that he did not see it occur. Instead, he stated he saw a "plume of smoke" in the distance "that he suspected to be a vehicle crash caused by the suspect." This distinction is important in that it renders Appellants' position even more speculative than in Stanley. Additional alleged facts support this conclusion: that it took Officer Boyce approximately 15-20 seconds after the collision occurred to arrive at the scene, and that, just prior to Suspect unlawfully entering the intersection where the collision occurred, Suspect "turned to assess where the police vehicles were located," then turned forward and collided with Armstrong's vehicle. Based on these facts, as alleged in Appellants' petition and taken in the light most favorable to Appellants, the only conclusion supported by the facts is that Officer Boyce was nowhere near the site of the collision, and that it was Suspect's reckless driving at dangerous speeds and unlawful disregard of traffic signals that caused the collision at issue. In other words, as alleged in Appellants' petition, "there is no way to tell whether the collision would have been avoided if the officer had abandoned the pursuit after initiating it" and does not establish proximate cause as a matter of law. Stanley, 995 S.W. 2d at 488. Finally, just as in Stanley, Appellants' claims hinge upon "the conjectural effect" that Respondents' respective pursuits had upon Suspect, and ultimately, the collision. In both cases, the defendant officers lawfully

9

pursued a suspect with lights and sirens activated, the suspect chose to violate the law and drive recklessly, and the only connection between the officers' pursuit of the suspect and the ensuing collision was the "conjectural effect of [their] pursuit on the pursued vehicle." Id.

Other Missouri cases have closely followed the reasoning in Stanley. In Dilley v. Valentine, the court held there was no factual basis to support a finding of proximate causation in a police pursuit case. Dilley v. Valentine, 401 S.W.3d 544 (Mo. App. W.D. 2013). Just as in the instant case, in Dilley, the plaintiff sued a police officer and the city who employed him when a vehicle fleeing from an officer struck and injured her. Id. at 546. As here, the plaintiff asserted the officer recklessly and negligently initiated and continued pursuit of the fleeing suspect and then sought to hold the officer personally liable for her injuries. Id. In Dilley, the pursuit lasted 120 seconds at speeds between 50 and 55 miles per hour and continued until the collision occurred. Id. at 549. Following Stanley, the Dilley court concluded the pursuing officer was not the proximate cause of plaintiff's injuries based on the following facts: the officer's emergency lights and sirens of his marked police car were activated; the officer's car was not physically involved in the accident; his patrol car was approximately 120 feet behind the fleeing suspect at the time of the accident; and the duration and speed of the pursuit were similar to those in Stanley. Id. The court held that those facts, considered together, showed the defendant officer's conduct was not the proximate cause of plaintiff's injuries as a matter of law. Id. In words similar to those used in Stanley, the Dilley court found the conclusion that "the collision would have been avoided had [the officer] abandoned the pursuit is based only on speculation." Id.

Here, just as the officers in Stanley and Dilley, Officers Zwilling and Boyce had their emergency lights and sirens activated pursuant to Missouri statute, and the last officer to encounter Suspect prior to the collision had his emergency lights and sirens activated at that

10

time.  Similarly, the defendant officers' vehicles were not physically involved in the collision at issue.

Based on analogous facts, the court in <u>Frazier v. City of Kansas City</u> again followed <u>Stanley</u> and found the defendant officers' alleged conduct was not the proximate cause of the plaintiffs' injuries as a matter of law.  <u>Frazier v. City of Kansas City</u>, 467 S.W.3d 327, 337 (Mo. App. W.D. 2015).  There, the pursuit lasted 120 seconds from when the officer made visual contact with the suspect's vehicle and continued until the collision occurred.  <u>Id</u>. at 335.  Just as here, the suspect presented a clear and immediate danger to the safety of others.  <u>Id</u>. at 331.  In <u>Frazier</u>, the plaintiff attempted, just as Appellants do here, to distinguish <u>Stanley</u> based on the duration of the pursuit.  However, the <u>Frazier</u> court, following <u>Stanley</u>, found no factual basis to support a finding of proximate causation and rejected the same argument Appellants advance here, holding that "[i]n sum, we find no distinction in the duration of pursuit, nor in any other significant fact that would make the application of <u>Dilley</u> and <u>Stanley</u> inappropriate to the facts in the case at bar."  <u>Id</u>. at 335-36.

Finally, in <u>Throneberry v. Missouri State Highway Patrol</u>, 526 S.W.3d 198 (Mo. App. W.D. 2017), the court again found no causal link between an officer's alleged negligence and a post-pursuit collision.  <u>Throneberry</u>, 526 S.W.3d at 210.  The court found the officer's pursuit of the suspect was not the proximate cause of an accident in which the fleeing suspect killed a third party under the following facts: the pursuit reached speeds of 91 miles per hour; the pursuit lasted two minutes or less; there was no physical contact between the officer's patrol car and the suspect's vehicle; and the officer's emergency lights and siren were activated.  <u>Id</u>.  The court found "'the only conceivable causal link between the [trooper's] alleged negligence and the collision is the conjectural effect of his pursuit on the pursued vehicle.'"  <u>Id</u>., citing <u>Stanley</u>, 995

11

S.W.2d at 488. The court rejected the same theory of proximate cause that Appellants assert in this case, finding the assumption that "at some point after a pursuit is abandoned, a fleeing suspect will stop driving recklessly . . . is itself 'rank conjecture and speculation.'" Id. at 211 (internal citation omitted). The court further found that regardless of factual variances based on speed, distance, or duration of the pursuit, nothing other than speculation supports a conclusion that the officer's conduct was a "cause" of the collision. Id.

In accordance with Stanley, Dilley, and Frazier, the Throneberry court affirmed the decision of the lower court, holding that the pursuing police officer in that case was not the proximate cause of the collision at issue between the pursued and a third party as a matter of law. Throneberry, 526 S.W.3d at 215. Therefore, these cases all support the rationale used by the trial court here—there is no way to tell whether the collision at issue would have been avoided if Respondents had abandoned their pursuit of Suspect.

Finally, Appellants argue the instant case is more like Moyer v. St. Francois County Sheriff Depart., 449 S.W.3d 415 (Mo. App. E.D. 2014). Appellants argue that Moyer stands for the proposition that a pursuit that is longer in duration, and faster in speed, than those involved in Stanley and Dilley will support a finding of proximate cause. We find Appellants' reliance on Moyer unavailing. Moyer is distinguishable.

In Moyer, a high-speed police pursuit lasted 10 miles, at speeds near 120 miles per hour, and ended in a collision between the pursued suspect and a third party. Moyer, 449 S.W.3d at 416. On those extreme facts, the Moyer court held that "as the time and distance between an officer and a fleeing suspect grows, the more likely it becomes that the suspect will cease fleeing in a reckless manner." Moyer, 449 S.W.3d at 418. By contrast, the facts at issue in this case are more analogous to Stanley, Dilley, and Frazier.

12

Here, the combined length of the alleged pursuits was significantly less than that alleged in Moyer, and Appellants do not specifically allege that Respondents reached speeds near the undisputed 120 miles per hour speeds at issue in Moyer. Even assuming the length of the pursuit as well as the speeds reached were comparable to those in Moyer, because none of the Respondents was near or within sight of Suspect prior to the collision, Respondents' alleged conduct was so disconnected, in both space and time, from Suspect's intervening reckless driving such that Respondents' conduct was not the proximate cause of the collision as a matter of law. Therefore, "under the conceded facts, a judgment different from that pronounced could not be rendered notwithstanding any evidence which might be produced." Armstrong, 49 S.W.3d at 824.

Nevertheless, Appellants argue the instant case is distinguishable from both Stanley and other similar cases because Suspect passed his house during the pursuit and would have safely stopped there had the Respondents abandoned their pursuit earlier. Appellants' presumption is not supported by the facts. Here, police had earlier identified Suspect's vehicle and its license plate, and Suspect committed another crime when he fled from an attempted lawful traffic stop at a high rate of speed. To presume that Suspect would have gone home, parked his wanted vehicle in front of his house thereby forcing Respondents to abandon their pursuit and preventing the subsequent collision is precisely the kind of speculation foreclosed by Stanley. See Stanley, 995 S.W. 2d at 488; see also Throneberry, 526 S.W.3d at 214 (rejecting similar argument regarding "claimed knowledge about the effect of an abandoned pursuit").

In sum, following the Missouri Supreme Court's precedent in Stanley, and consistent with the overwhelming majority of Missouri cases, we find the trial court did not err in granting Respondents' motion for judgment on the pleadings because Appellants failed to allege specific

13

facts sufficient to establish that Respondents' conduct was the proximate cause of Appellants' injuries as a matter of law. We find Appellants' assertion that Respondents' conduct proximately caused the collision at issue is supported by mere conjecture and speculation, not facts. <u>Stanley</u>, 995 S.W.2d at 488; <u>Dilley</u>, 401 S.W.3d at 549; <u>Throneberry</u>, 526 S.W.3d at 211. Point denied.

<u>Conclusion</u>

The Judgment is affirmed.

_Sherri B. Sullivan_

SHERRI B. SULLIVAN, J.

Angela T. Quigless, P.J. and
Robert M. Clayton III, J., concur.

14