Floyd BROWN, et al., Appellant,

v.

Bailus M. TATE, et al., Respondent.

No. WD 49085.

Missouri Court of Appeals,
Western District.

Dec. 13, 1994.

David H. Bony, Kansas City, for appellant.

Vincent F. O'Flaherty, Kansas City, for respondent.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

KENNEDY, Presiding Judge.

Plaintiffs, who are the parents and minor child respectively, of Alfonso Brown, deceased, filed a wrongful death action against Kathryn Larson, a police officer of Kansas City, Missouri, and the Board of Police Commissioners. Plaintiffs alleged that Alfonso Brown's death resulted from a 2:00 a.m. intersectional collision between Alfonso's 1971 Chevrolet truck, being operated by him, and police officer Larson's 1989 GMC police paddy wagon, and that Officer Larson's negligence caused or contributed to cause the collision and Alfonso's death as a result thereof. The allegations of negligence were: that Officer Larson was driving too fast for conditions, that she failed to maintain a lookout, that she failed to maintain control of her vehicle, and that she failed to reduce speed prior to entering the intersection. The Board of Police Commissioners was Officer Larson's employer and the owner of the 1989 GMC paddy wagon she was driving. Police Officer Larson was responding to another officer's call for assistance. Facing her as she approached the intersection was a flashing yellow light, and facing Alfonso as he approached the intersection was a flashing red light. Alfonso did not stop his truck before entering the intersection.

Officer Larson's motion to dismiss plaintiffs' petition claimed Officer Larson was protected by the doctrines of official immunity and of public duty. A police officer is a public official for purpose of the official immunity doctrine. *Bachmann v. Welby*, 860 S.W.2d 31, 33 (Mo.App.E.D.1993). The Board of Police Commissioners claimed it could not be liable for Officer Larson's alleged negligence, since it would be liable only vicariously, as Larson's employer, and that Larson's defenses (of official immunity and public duty) shielded it as well.

The trial court sustained defendants' motions to dismiss, and plaintiffs have appealed. We treat the order of dismissal as a summary judgment, since the court considered an affidavit, detailing the facts of the acci-

dent and the investigation, which was attached to the motion to dismiss. *See* Rule 55.27(a).

█ We start with the general rule that a police officer is under a common duty with all drivers to observe traffic laws and regulations. In *Oberkramer v. City of Ellisville*, 706 S.W.2d 440, 441 (Mo. banc 1986), the court said: "A police officer is required to observe the care which a reasonably prudent person would exercise in the discharge of official duties of like nature under like circumstances." *See also Frandeka v. St. Louis Public Service, Co.*, 361 Mo. 245, 234 S.W.2d 540, 545 (Mo. banc 1950); *Roberson v. Griffeth*, 57 N.C.App. 227, 291 S.E.2d 347 (1982).

█ The issues in the case before us have nothing to do with the police officer's negligence or non-negligence. The defendants claim that even if the officer was negligent, and her negligence contributed to cause Alfonso Brown's death, still the police officer is shielded from liability by the doctrines of official immunity and public duty. The Board of Police Commissioners claims it has a derivative immunity from the police officer's immunity.

█ The defendants in their brief expressly say that "defendants do not contend and have never stated that officer Larson was responding to an emergency, was on an emergency run, or that she was driving an emergency vehicle." That being the case, we believe the best reasoning holds the police officer enjoys no official immunity or public duty protection from liability. The doctrine of official immunity shields a police officer from liability for negligence in the performance of his discretionary, as opposed to ministerial, duties. *Kanagawa v. State by and through Freeman*, 685 S.W.2d 831, 835 (Mo. banc 1985); *Boyle v. City of Liberty, Mo.*, 833 F.Supp. 1436, 1442 (W.D.Mo.1993). In *Kanagawa*, 685 S.W.2d at 836, the court said: "[I]n the final analysis, the decision as to whether a public official's acts are discretionary or ministerial must be determined by the facts of each particular case after weigh-

ing such factors as the nature of the official's duties, the extent to which the acts involve policymaking or the exercise of professional expertise and judgment, and the likely consequences of withholding immunity." We hold that a police officer, driving on the public streets and highways, in a non-emergency situation, has no blanket immunity from liability for negligence in the operation of his car. His driving does not "involve policymaking or the exercise of professional expertise and judgment." *Kanagawa*, 685 S.W.2d at 836. We point out, by way of contrast, there are many things a police officer does which do require professional expertise and judgment. Included in this list are: deciding whether to arrest or detain a person for driving while intoxicated, *Schutte v. Sitton*, 729 S.W.2d 208 (Mo.App.E.D.1987); deciding how best to apprehend a gunman when surrounding the gunman's apartment, *Green v. Denison*, 738 S.W.2d 861 (Mo. banc 1987); deciding whether to set up barricades or warning devices when investigating an accident, *Beaver v. Gosney*, 825 S.W.2d 870 (Mo.App.W.D.1992); disciplining prisoners, *Shivers v. Barnes*, 813 S.W.2d 121 (Mo.App.W.D.1991); executing a search warrant, *DaVee v. Mathis*, 812 S.W.2d 816 (Mo.App.W.D.1991); deciding when to pursue and end pursuit of a fleeing vehicle, *Fonseca v. Collins*, 884 S.W.2d 63 (Mo.App.W.D.1994); and pursuing another vehicle, *Hagedorn v. Adams*, 854 S.W.2d 470 (Mo.App.W.D.1993). In such situations, "the likely consequences of withholding immunity," *Kanagawa*, 685 S.W.2d at 836, would be that police officers would be overcautious, when they should act boldly and quickly. *Bachmann*, 860 S.W.2d at 34. We grant them immunity in order that they may act decisively, even though they might afterwards, by hindsight, be adjudged to have acted negligently. *Green v. Denison*, 738 S.W.2d 861 (Mo. banc 1987). But driving an automobile in a non-emergency situation is not that kind of case.[1]

Defendants rely heavily on *Bachmann, supra*, 860 S.W.2d at 31. That case does not support defendants' position. The court there treated the police officer as acting in

1. We should not be understood to hold that a police officer has official immunity from liability for negligence in driving an automobile in emergency situations. *That question is not before us.*

an emergency situation, whereas Officer Larson, in our case, was admittedly not involved in an emergency situation. Compare our case of *Newson v. City of Kansas City*, 606 S.W.2d 487, 491 (Mo.App.W.D.1980).

■ Defendants next contend that the public duty doctrine protects the police officer from liability. The public duty doctrine holds that a public employee is not liable to an individual for injuries resulting from a breach of duty the employee owes only to the general public. In *Spotts v. City of Kansas City*, 728 S.W.2d 242 (Mo.App.W.D.1987), a highway patrolman had negligently released an obviously intoxicated person, whom he had stopped to ticket for driving with an expired license plate, allowing him to drive away. Fifteen minutes later, the intoxicated person was involved in an auto accident in which the plaintiff was injured. The public duty doctrine was held to shield the officer from liability. In *Jamierson v. Dale*, 670 S.W.2d 195 (Mo.App.W.D.1984), an inspector for the Missouri Division of Family Services had recommended the issuance of a license to a certain day care center, even though, in violation of state regulations, there was no resilient material under the seesaw on the playground. Plaintiff's child was injured in a fall from the seesaw. The inspector was held not liable, since her duty was a public duty, a duty to the public at large, not to that discrete class of children attending day care centers.

■ Defendants urge a novel application of the public duty doctrine when they argue that it should be applied to shield a police officer from liability for negligence in operating his automobile, in a non-emergency situation. To bring a public official, or a public employee, within the protection of the public duty doctrine, it is not sufficient that he be acting within the scope of his employment; he must be engaged in some particular duty of his office or employment which—to borrow the official immunity terminology—calls for his professional expertise and judgment. The public duty doctrine is defined differently than the official immunity doctrine. The public duty doctrine holds that a public official, or a public employee, may not be held liable to a person injured by his negligence in the performance of his public duty, because his duty is owed only to the general public, and not to the person injured. In the case of a public official, rarely if ever will the public duty doctrine provide a shield from liability where the official immunity doctrine would not. The two doctrines merge; they produce the same result. It may be that the public duty doctrine will furnish protection to a public employee who is not a public official in a case where the official immunity doctrine would not. *See Jamierson*, 670 S.W.2d at 195. *See also, Clay v. Scott*, 883 S.W.2d 573 (Mo.App.E.D. 1994).

The public duty doctrine is not applicable to this case. The officer's duty to operate a motor vehicle with the highest degree of care, and to obey traffic rules and regulations, in a non-emergency situation, cannot be said to be a duty owed only to the public at large; it is a duty owed to all who might be injured by negligent operation of the automobile. The kind of duty owed to the public at large, and not to the individual injured, is the same kind of duty as that which gives official immunity, namely, a duty which calls for the public employee's or public official's professional expertise, training and judgment. *Jamierson*, discussed above, may illustrate this point. The duty of the day care center inspector was to inspect day care centers by certain standards, and to assess the compliance of the day care center. The public duty doctrine protected her from liability for her alleged negligence in performing this task—but no one would argue that she was protected from liability for negligence in operating her automobile as she drove to the day care center, even though she was in the scope of her employment in doing so.

The Board of Police Commissioners does not claim sovereign immunity for itself, as indeed it could not. *See* § 537.600, RSMo 1986. It claims instead a derivative immunity, from the immunity from liability which it claims for the police officer. We will not examine this proposition, since we have held that the police officer has no official immunity in this case, or a public duty defense.

Judgment reversed, and cause remanded to the trial court for further proceedings.

All concur.