**Michael DAVIS–BEY, Appellant,**

v.

**MISSOURI DEPARTMENT OF
CORRECTION, Respondent.**

**No. WD 53257.**

Missouri Court of Appeals,
Western District.

April 29, 1997.

Michael Davis Bey, Jefferson City, pro se, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, John R. Munich, Deputy Attorney General, Milton M. Frazier, Assistant Attorney General, Jefferson City, for respondent.

Before HANNA, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

ELLIS, Judge.

On August 26, 1995, Michael Davis–Bey, an inmate at the Algoa Correctional Center, was injured when the bus transporting him to his work detail rear-ended another car. The impact of the collision threw him to the floor of the bus where he hit his back on a "hump" bolted to the floor. As a result of this accident, Bey claims he now experiences severe pain, limited mobility, trouble walking, and swelling in his lower back. On February 15, 1996, Bey filed a *pro se* negligence suit in the Circuit Court of Cole County against Correctional Officer Ronald Morris, the driver of the bus, the Missouri Department of Corrections (DOC), and Mr. Carl White, the Superintendent of the Algoa Correctional Center.

The Attorney General's Office filed a motion to dismiss Bey's petition for failing to state a claim upon which relief could be granted on the following grounds: (1) the petition did not allege all elements necessary to state a claim of negligence, (2) the action was barred by the official immunity doctrine, and (3) the action was barred by the public duty rule. On June 18, 1996, the trial court dismissed Bey's claims against defendants Morris and White, finding the allegations were insufficient to establish a cause of action in negligence. Although the court also found the allegations against the DOC were insufficient to support an action in negligence, it allowed Bey until July 15, 1996 to amend his pleading as it related to this defendant. The court dismissed Bey's petition with prejudice on July 17, 1996. Bey appeals.

■ "Missouri is a fact pleading state." *Luethans v. Washington Univ.*, 894 S.W.2d 169, 171 (Mo. banc 1995). Fact-pleading is designed to limit and define for the parties

and the trial court the controverted issues to be tried and to facilitate a trial on the merits. *Id.* at 172. Under Rule 55.05, a petition must contain a short and plain statement of the facts showing that the pleader is entitled to relief. *Id.*; Rule 55.05. In reviewing the dismissal of a petition for failure to state a claim upon which relief can be granted, we must determine whether the facts pleaded and the reasonable inferences drawn therefrom, construed in the light most favorable to plaintiff, demonstrate any basis for relief. *Watley v. Missouri Bd. of Probation & Parole,* 863 S.W.2d 337, 338 (Mo.App. W.D. 1992). In his sole point on appeal, Bey claims his petition set forth sufficient facts from which an actionable claim of negligence against the defendants could reasonably have been inferred.

■ The defendants first claim Bey's petition states only conclusions of law and does not properly plead the ultimate facts, or allegations from which to infer those facts, necessary to make a submissible negligence case. Specifically, the defendants complain that Bey "merely alleged that defendant Morris was negligent in that he failed to drive safely."

The Eastern District of this court has previously held that "a general allegation of negligence predicated on an act by the defendant causing an injury is sufficient to state a cause of action; it is not necessary to state specific facts which show the negligence." *Stites v. Ray,* 781 S.W.2d 165, 167 (Mo.App. E.D.1989). Bey's petition avers that defendant Morris was negligent based on his act of rear-ending another automobile. In addition, the injury Bey sustained to his back as a result of the collision is sufficiently averred throughout the petition. Giving Bey's petition every favorable intendment, it sounds in negligence. Moreover, given the purpose of fact-pleading, defendants' assertion that the petition left them "unaware of the when, where, what or why there was a duty, breach of duty, or damages" is without merit. Bey's petition sufficiently apprised the defendants of the issues he intended to raise at trial.

■ The defendants next argue that Bey's claims against defendant Morris are barred by the official immunity doctrine.

The official immunity doctrine shields governmental officials, like defendant Morris, from civil liability for negligence strictly related to the performance of discretionary duties. *Bachmann v. Welby,* 860 S.W.2d 31, 33 (Mo.App. E.D.1993). This doctrine does not, however, immunize governmental officials from liability arising out of the negligent performance of their ministerial duties. *McGuckin v. City of St. Louis,* 910 S.W.2d 842, 844 (Mo.App. E.D.1995). Whether a public official's acts are discretionary or ministerial depends largely on the nature of the official's duties, the extent to which the acts involve policy making or the exercise of professional judgment and expertise, and the consequences of withholding immunity. *Kanagawa v. State by & Through Freeman,* 685 S.W.2d 831, 835 (Mo. banc 1985). Official immunity allows governmental officials to act decisively with regard to the safety and welfare of the public without the fear of personal liability. *McGuckin,* 910 S.W.2d at 844.

■ The defendants contend that driving and transporting inmates is a discretionary function and, therefore, the official immunity doctrine insulated defendant Morris from liability for any error on his part in performing this function. However, driving an automobile in a non-emergency situation does not "involve policy making or the exercise of professional judgment," and, therefore, is not a discretionary function. *Brown v. Tate,* 888 S.W.2d 413, 415 (Mo.App. W.D. 1994) (police officer liable for damages to motorist arising out of negligent operation of a motor vehicle in a non-emergency situation) (citing *Kanagawa,* 685 S.W.2d at 836). All drivers, including public officials, share a common duty to observe traffic laws and regulations and to exercise the highest degree of care on the roads "so as not to endanger ... the life or limb of any person." § 304.010[1]; *Brown,* 888 S.W.2d at 415. Only in an emergency situation would operating a motor vehicle be deemed a discretionary function and, even then, only certain aspects of responding to an emergency would be considered discretionary. *McGuckin,* 910 S.W.2d at 845; § 304.022. Defendant Morris was transporting inmates to work detail. He does not contend, nor has he argued, that he

1. All statutory references are to RSMo 1994 un- less otherwise noted.

was operating the bus as an "emergency vehicle," as defined in § 304.010, at the time of the collision. He was, therefore, bound by the same traffic rules and regulations as other drivers. That being the case, Defendant Morris was not entitled to official immunity for his allegedly negligent transport of the inmates.

Defendants next contend the public duty doctrine protects defendant Morris from liability.[2] Under that doctrine, a public employee is not liable to an individual for injuries resulting from a breach of duty the employee owes only to the general public. *Heins Implement Co. v. Missouri Highway & Transp. Comm'n*, 859 S.W.2d 681, 694 (Mo. banc 1993). The kind of duty owed to the public at large, rather than the individual injured, is the kind that requires the public official to use his professional expertise, training and judgment; it is not sufficient that the public official be acting within the scope of his employment. *Brown*, 888 S.W.2d at 416. Defendant Morris' duty to operate the bus with the highest degree of care and to obey all traffic rules and regulations, in a non-emergency situation, is owed to all who might be injured by his negligent operation of the vehicle, not just the public at large. *Id.* Therefore, the public duty doctrine does not shield defendant Morris from liability in this case. The trial court erred in dismissing Bey's claim against defendant Morris.

Finally, the defendants contend Bey's allegations against the DOC and Superintendent White are insufficient to state a claim upon which relief can be granted because they are based on the inapplicable doctrine of respondeat superior.[3] Under the doctrine of respondeat superior, an employer is liable to third parties for torts committed by an employee, if the tort was committed while the employee was engaged in activities within the course and scope of his or her employment. *P.S. v. Psychiatric Coverage, Ltd.*, 887 S.W.2d 622, 624 (Mo.App. E.D. 1994). However, the plaintiff cannot recover against the employer if he does not have grounds for recovery against the employee. *McGuckin*, 910 S.W.2d at 844–45.

The defendants contend there was no liability to vicariously impose upon the DOC because defendant Morris was shielded from liability under the official immunity and public duty doctrines.[4] Having previously concluded that the official immunity and public duty doctrines do not afford defendant Morris any protection from liability, the doctrine of respondeat superior is the proper vehicle for bringing suit against the DOC.[5]

The doctrine of respondeat superior is, however, an inappropriate vehicle for holding Superintendent White vicariously liable for the alleged negligence of his subordinate, defendant Morris.

It is well-settled law that public officers are not responsible for acts of subordinate officials, if such subordinates are themselves employees of the government, where there is no negligence on the part of such public officials in employing them,

---

2. The doctrines of official immunity and public duty merge and produce the same result. *Brown v. Tate*, 888 S.W.2d 413, 416 (Mo.App. W.D. 1994). The public duty doctrine will rarely, if ever, shield liability where the official immunity doctrine would not. *Id.*

3. Bey's petition alleges no independent negligence on the part of the DOC and Superintendent White. We, therefore, assume Bey is relying on the doctrine of respondeat superior to allege liability against these defendants for the alleged liability of Officer Morris.

4. The defendants acknowledge that Missouri legislature has expressly waived sovereign immunity for "injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles ... within the course of employment." § 537.600.1(1). The statutory abrogation of sovereign immunity does not in any way abrogate the protection afforded a public employee under the public policy doctrine. *Beaver v. Gosney*, 825 S.W.2d 870, 873 (Mo.App. W.D.1992).

5. The express statutory waiver of sovereign immunity as it relates to the negligent operation of a motor vehicle by a public employee in the course of his employment does not create a new cause of action, it provides a remedy for an existing cause of action previously barred by sovereign immunity. *McGuckin*, 910 S.W.2d at 844. "Suits to recover damages pursuant to this waiver are brought under the doctrine of respondeat superior." *Id.*

unless the superior officer has directed or encouraged or ratified such acts, or has personally co-operated therein....

*Jackson v. Wilson,* 581 S.W.2d 39, 46 (Mo. App. W.D.1979) (citing *Fidelity & Casualty Co. of New York v. Brightman,* 53 F.2d 161, 166 (8th Cir.1931)).[5] Other than the fact that Superintendent White is a named defendant, we find no allegations that he directed, encouraged, ratified or personally cooperated in the collision. The court, therefore, properly dismissed Bey's claim against Superintendent White.

Based on the foregoing, the judgment as it relates to the Department of Corrections and Correctional Officer Morris is reversed and remanded for further proceedings. The dismissal against Superintendent White is affirmed.

All concur.

---

**5.** Bey does not allege that Superintendent White was somehow negligent in hiring Officer Morris.